# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-0378V
UNPUBLISHED

| | |
|---|---|
| WADE GREEN,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br><br>Filed: September 1, 2023 |

*Bradley S. Freedberg*, Denver, Colorado, for Petitioner.

*Emily H. Manoso*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING DAMAGES[1]

On April 3, 2020, Wade Green filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). He filed an amended petition on November 15, 2021, alleging that he received an influenza ("flu") vaccination on November 9, 2018, and thereafter suffered a left-sided shoulder injury related to vaccine administration ("SIRVA"). Amended Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

Although Petitioner has been found entitled to compensation, the parties could not agree on the damages to be awarded, and therefore the matter was scheduled for a "Motions Day" proceeding. For the reasons discussed below, and after hearing argument

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

from the parties, I find that Petitioner is entitled to compensation in the amount of $55,000.00 for his actual pain and suffering.

### I. Procedural History

As stated above, on August 15, 2022, I issued a ruling on entitlement in favor of Petitioner. The parties were unable to agree on an appropriate amount to award Mr. Green for his pain and suffering and agreed to brief the issue. ECF Nos. 44-45. On December 7, 2022, Petitioner filed his brief and declaration in support of damages ("Mot."), and Respondent filed a Response on March 14, 2023 ("Opp."). Petitioner filed a reply ("Reply") memorandum on April 13, 2023. ECF Nos. 46-48. I heard arguments from both parties during a Motions' Day Damages hearing held on August 25, 2023.

### II. Relevant Medical History

A complete recitation of the facts can be found in the Petition, Amended Petition, the parties' respective pre-hearing filings, and in Respondent's Rule 4(c) Report.

In brief summary, Mr. Green was a 47-year-old self-employed computer programmer at the time of vaccination with a past medical history significant for left shoulder impingement in 1998, a prior "volleyball injury" to his left shoulder in 1990, and a 30-year history of rib and back pain. Petitioner's Exhibit ("Ex.") 2 at 32; Ex. 1 at. 1.

Mr. Green received a flu vaccine in his left deltoid on November 9, 2018, at the office of his children's pediatrician. Mot. at 5; Ex. 5 at 2. Mr. Green maintains that "I had received annual flu shots every year for at least the last decade. This one was different. The first night there was a deep ache in my left shoulder. The severe pain in my shoulder started about two weeks later. That's what changed everything." Mot. at 5.

On November 19, 2018, Mr. Green presented to his primary care provider ("PCP"), Jason Cannell, D.O., at Boulder Creek Family Medicine regarding a six-week history of abdominal symptoms, hemorrhoids, chronic fatigue, rapid heart rate, and rectal bleeding. Ex. 2 at 36-38. Although there is no record of Mr. Green reporting left shoulder pain during this visit, he purports to have in fact mentioned pain at this time. *See* Reply at 1.

On December 3, 2018, nearly four weeks after vaccination, Mr. Green returned to Dr. Cannell complaining of "shoulder pain since his flu shot on 11/9, 24 days ago." Ex. 2 at 32. Mr. Green stated that "this pain caused him to use his left shoulder differently, which he believed was causing a new pain to the anterior aspect of his shoulder with limited [range of motion]." *Id*. Dr. Cannell assessed Mr. Green with left shoulder pain and

impingement syndrome, prescribed physical therapy, and advised him to continue applying ice and taking ibuprofen. *Id*. at 35.

Two days later, on December 5, 2018, Mr. Green started physical therapy for his left shoulder. Ex. 1 at 1. He rated his pain at a 4/10 at the time, but stated that his pain ranged between a 2/10 (at best), and 7/10 (at worst). *Id*. Mr. Green returned for one additional visit on December 13, 2018, before discontinuing PT. *Id*. at 4-8. During this time, Mr. Green attended two chiropractic sessions with Sara Berg, D.C., for minor neck, upper back, and trapezius pain, and arm pain after a flu shot. Ex. 8 at 2-6. At these sessions, Mr. Green rated his shoulder pain at 5/10. *Id*.

Thereafter, there is a gap in treatment of more than three months. On March 20, 2019, Mr. Green was examined by orthopedic surgeon, Lorri Fulkerson, M.D., for complaints of persistent nocturnal left shoulder pain. Ex. 4 at 5. Dr. Fulkerson opined that Mr. Green's x-ray and exam were consistent with subacromial bursitis and ordered an MRI to rule out rotator cuff pathology. *Id*.

On March 28, 2019, Mr. Green underwent an MRI of his left shoulder which showed: "1. Mild tendinopathy distal supraspinatus tendon and a ganglion along the central tendon in the musculotendinous junction. 2. Mild degenerative change acromioclavicular joint. Mild anterior curve and lateral downslope to the acromion. 3. Mild tendinopathy intra-articular biceps tendon." Ex. 3 at 69; Ex. 4 at 7. On April 5, 2019, Mr. Green met with Dr. Fulkerson to review these results. Dr. Fulkerson diagnosed Petitioner with bursitis and tendonitis of the supraspinatus tendon, and osteoarthritis of his left acromioclavicular ("AC") joint. Ex. 4 at 2.

On May 2, 2019, Mr. Green presented to orthopedic surgeon Thomas Hackett, M.D., at Steadman Clinic, for complaints of the onset of left shoulder pain since getting a flu shot. Ex. 5 at 2. Mr. Green rated his pain a 2/10 at rest, and 8/10 at worst. *Id*. His physical exam demonstrated "tenderness to palpation," a positive Hawkins test, but was otherwise normal with full active range of motion ("ROM") without pain. *Id*. at 2-3. Dr. Hackett opined that Mr. Green was experiencing left shoulder impingement, recommended he attend formal PT, and administered a subacromial cortisone injection. *Id*.

On May 7, 2019, Mr. Green began attending physical therapy at a different facility, attending a total of 10 sessions between May 8, 2019, and June 26, 2019, with documented improvement in his shoulder pain. He had a final physical therapy session a month later, on July 24, 2019, before he discontinued physical therapy. *Id*. at 45-85. Mr. Green also attended four chiropractic sessions from May 17, 2019, through May 28, 2019,

for his neck, back, and shoulder pain. Ex. 8 at 9-18. At each of these chiropractor visits, Mr. Green rated his shoulder pain at a 4/10. *Id*.

On July 29, 2019, Mr. Green reported to Dr. Cannell for an annual wellness exam. Ex. 2 at 4. He reported "that the left shoulder pain that he presented with the end of 2018 has improved with physical therapy." *Id*. His exam was normal, and no recommendations were made for ongoing left shoulder treatment. However, impingement syndrome of the left shoulder remained listed among the assessments. *Id*. at 7. Six months later, on February 3, 2020, Mr. Green presented to Dr. Cannell for diarrhea, exertion induced nausea from skiing, and a lipoma on his back, but made no complaint regarding shoulder pain. Ex. 2 at 21-23.

Ten months later, on May 26, 2020, Mr. Green began physical therapy for complaints of a four-week history of neck and *right* shoulder pain. Ex. 17 at 44. Petitioner attended 15 sessions of physical therapy for his right shoulder and neck between May 26, 2020, and August 19, 2020. Ex. 17 at 1-25, 28-42. During this course of physical therapy, Mr. Green returned to see Dr. Hackett on June 24, 2020, for complaints of worsening right shoulder pain since January 2020. Ex. 17 at 49. Dr. Hackett recounted that Mr. Green had recently called his office for his right shoulder complaints and was referred to physical therapy. *Id*. Dr. Hackett completed a detailed evaluation of both of Mr. Green's shoulders. *Id*. Petitioner's left shoulder had no tenderness to palpation, and full active ROM, and strength, and negative orthopedic testing. *Id*. Dr. Hackett diagnosed Mr. Green with right shoulder adhesive capsulitis and administered a steroid injection to his right shoulder. *Id*. at 50.

Nearly 14 months later, on August 16, 2021, Mr. Green returned to physical therapy for "left sided thoracic and neck pain increased with computer activity, and shoulder pain with overhead activity." Ex. 18 at 8. Petitioner reported he had left shoulder pain from diving off a diving board into a pool, at which time he felt a catch and a pop in the back of his shoulder. *Id*. His diagnoses included pain in left shoulder, anterior soft tissue impingement and posterior soft tissue impingement. *Id*. Petitioner attended 10 physical therapy sessions ending on October 21, 2021, and at his last visit reported he still felt some soreness, but felt he was slowly improving. *Id*. at 8-27.

### III. The Parties' Arguments

#### a. Petitioner

In his brief, Mr. Green characterizes his SIRVA injury as more "lingering and invasive than the average SIRVA injury." Mot. at 2. He states that he received a steroid injection, chiropractic treatment, physical therapy, and that even with treatment, his pain

4

and injury persisted for more than four years. *Id*. at 1-2. In addition, Petitioner alleged that his inability to use his left shoulder led to overuse and injury to his right shoulder, which also required medical treatment. *Id*. Petitioner also explained in detail how this injury has affected his personal life.

During the hearing, Petitioner discussed one prior SIRVA stipulated case[3] that he maintained involved an injured claimant with a similar SIRVA injury, and where $100,000.00 in pain and suffering was awarded – making $95,000.00 reasonable, given that his circumstances were comparable.

### b. Respondent

Respondent argued that a pain and suffering award of $55,000.00 is appropriate given the overall nature of Mr. Green's injury. Opp. at 1. At the outset, Respondent argued that "the evidence in the case does not support a vacillating injury from petitioner's left shoulder to his right shoulder . . ." but rather, that Petitioner's injury was limited to his left shoulder and was of relatively short duration. In addition, Respondent argued that Petitioner only received 3 ½ months of active treatment, limited to one steroid injection, one MRI, 13 PT sessions, and six chiropractic sessions.

Respondent noted that Mr. Green's case was consistent "with lower awards for past pain and suffering," as the medical records reflect that he sustained a relatively mild left SIRVA injury and received limited and minimally invasive treatment for 8 ½ months. Opp. at 9-10. Respondent cited to the *Rayborn* and *Norton* cases,[4] as comparable cases to support the $55,000.00 award proposed by Respondent. Opp. at 12. In *Rayborn*, a claimant received $55,000.00 for her pain and suffering, based on "a handful of office visits, a cortisone injection, a similar number of PT/OT sessions, four-months without active treatment over a similar total duration, and two routine imaging procedures. Accordingly, the *Rayborn* petitioner's course is comparable to that of petitioner in this case in many respects, though the initial delay in seeking treatment was longer in *Rayborn*." *Id*. Similarly, the *Norton* petitioner received $55,000.00, for her pain and suffering, after undergoing very similar to treatment as Mr. Green. *Id*. That petitioner reported her injury just two weeks after vaccination, underwent one MRI, one cortisone

---

[3] The case cited by Petitioner is *Mackey v. Sec'y of Health & Human Servs*., No. 16-1289, 2017 WL 3812713 (Fed. Cl. Spec. Mstr. Aug. 2, 2017).

[4] *Rayborn v. Sec'y of Health & Human Servs*., No. 18-0226, 2020 WL 5522948, at *2-3 (Fed. Cl. Spec. Mstr. Aug. 14, 2020); *Norton v. Sec'y of Health & Human Servs*., No. 19-1432, 2021 WL 4805231 at *5-7 (Fed. Cl. Spec. Mstr. Sept. 14, 2021).

injection, 23 physical therapy sessions, and sought treatment until seven months post vaccination. *Id*.

Respondent also distinguished the *Mackey* case discussed by Petitioner at hearing, noting that its award was the product of a stipulation, so that the specific facts of the case were not available. However, Respondent noted that the petitioner in that case appeared to suffer from brachial neuritis rather than a SIRVA injury. Accordingly, Respondent argues that Petitioner's award should be significantly lower than the *Mackey* case cited by Petitioner and is more comparable to the case discussed cited by Respondent.

### IV.     Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include an award "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). Petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no precise formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("Awards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

A special master may also look to prior pain and suffering awards to aid in the resolution of the appropriate amount of compensation for pain and suffering in each case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages

for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, a special master may rely on his or her own experience adjudicating similar claims. *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims). Importantly, however, it must also be stressed that pain and suffering is not determined based on a continuum. *See Graves v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 579 (2013).

## V. Appropriate Compensation in this SIRVA Case

### a. Awareness of Suffering

Neither party disputes that that Mr. Green had full awareness of his suffering, and I find that fact is supported by the record evidence.

### b. Severity and Duration of Pain and Suffering

With respect to the severity and duration of the injury, Mr. Green's medical records and affidavits provide a description of the pain he experienced throughout the duration of his injury. As noted, Mr. Green was seen by his PCP relatively quickly, just 24 days[5] after vaccination, where he reported pain in his left shoulder since receiving his flu vaccination. Ex. 2 at 32. He was diagnosed with left shoulder pain and impingement and prescribed a course of physical therapy. *Id*. After a brief gap in treatment of approximately three months, Mr. Green sought additional treatment and underwent an MRI. The MRI results included mild tendinopathy of the distal supraspinatus tendon, mild degeneration of the AC joint, and mild tendinopathy of the intra-articular biceps tendon. Ex. 3 at 69. He sought care from another orthopedist and began a second round of physical therapy at a different facility. Mr. Green attended 10 PT sessions until July 24, 2019, with documented improvement in his left shoulder pain. Ex. 2 at 45-85. Thereafter, there is a 10 month gap in treatment spanning from the end of July 2019, to the end of May 2020. On May 26, 2020, Mr. Green begins complaining of *right* shoulder and neck pain. Ex. 17 at 44. During an examination in June 2020, it is noted that Mr. Green's *left* shoulder (the vaccine-injured shoulder) had no tenderness to palpation, full active range of motion, and negative orthopedic testing. Ex. 17 at 49.

There is another larger treatment gap of 14 months between June of 2020 and August 2021, with no left shoulder appointments despite several intervening medical

---

[5] I acknowledge that Petitioner stated in his Reply that he did report his shoulder injury to his PCP, just 10 days after vaccination, although there is no record of that report in the medical records. Ex. 2 at 36-38; Reply at 1.

visits. On August 16, 2021, he returned to physical therapy complaining of "left sided thoracic and neck pain increased with computer activity, and shoulder pain with overhead activity." Ex. 18 at 8. He reported experiencing shoulder pain from diving off a diving board at the pool, at which time he felt a catch and pop in the back of his shoulder. *Id*. His diagnoses included pain in left shoulder, anterior soft tissue impingement and posterior soft tissue impingement, for which he attended 10 physical therapy sessions which ended on October 21, 2021.

Although Petitioner did cite to one prior SIRVA case during the hearing in support of his proposed demand of $95,000.00, the two cases cited by Respondent were superior comparables. *Mackey* (which was not even raised prior to the oral argument) involved a stipulated award, rather than reasoned determination, and hence it has limited value in guiding the result in this case. *Mackey v. Sec'y of Health & Hum. Servs.*, No. 16-1289V, 2017 WL 3812713 (Fed. Cl. Aug. 2, 2017). Additionally, the *Mackey* petitioner appears to have alleged that the flu vaccine caused her to develop Parsonage Turner Syndrome, SIRVA, bursitis, brachial plexopathy, neuromuscular symptoms, tendonitis, brachial neuritis, and neuropathy – injuries distinguishable from a SIRVA. *Mackey,* 2017 WL 3812713, at *1.

Overall, Mr. Green's injury involves a non-surgical SIRVA injury that was on the milder side of the spectrum. And I cannot credit Mr. Green's argument that his right shoulder injury was due to compensatory overuse due to the vaccine injury to his left shoulder, since there is insufficient evidence in the record to support that contention.

I do give some weight to Mr. Green's statement that his left SIRVA injury impacted his personal life as a father, affected his sleep, and his ability to engage in the activities that he enjoyed. However, several of the treatment gaps undermine the conclusion that the injury was severe. Although the shorter gaps in Mr. Green's treatments are explained in the medical records, longer ones (such as the large gap from the end of July 2019 to the end of May 2020, or from June 2020 to August 2021) are not fully explained. Although the Covid-19 Pandemic surely affected Mr. Greens' ability to seek medical treatment during this time, it does not fully explain why he did not seek treatment from July 2019 to March 2020 or from June 2020 to August 2021 for his left shoulder.

Under such circumstances and considering the arguments presented by both parties at the hearing, a review of the cited cases, and based on the record as a whole, I find that **$55,000.00** in compensation for past pain and suffering is reasonable and appropriate in this case.

**CONCLUSION**

In light of all of the above, I award **Petitioner a lump sum payment of $55,000.00 for his actual pain and suffering, in the form of a check payable to Petitioner Wade Green.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id*.

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[6]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[6] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.